TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

**SHANNON BOYLAN** (DC Bar No. 1724269)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 598-9584
Facsimile: (202) 305-0275
Email: Shannon.Boylan@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE STATE OF ALASKA; AND THE ALASKA DEPARTMENT OF ENVIRONMENTAL CONSERVATION, | Case No. 3:22-cv-00163-HRH |
| Plaintiffs, | |
| v. | **FEDERAL DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior; BUREAU OF LAND MANAGEMENT; AND TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs, the State of Alaska and the Alaska Department of Environmental Conservation ("ADEC"), originally brought this lawsuit against Federal Defendants, the United States of America, the U.S. Department of the Interior ("Department" or "Interior"), Deb Haaland, in her official capacity as Secretary of the Interior, the Bureau of Land Management ("BLM"), and Tracy Stone-Manning, in her official capacity as Director of the BLM, on July 15, 2022, challenging the Department's compliance with three Congressional reporting requirements regarding contaminated lands conveyed to Alaska Natives under the Alaska Native Claims Settlement Act ("ANCSA"). Federal Defendants moved to dismiss and, in response, Plaintiffs amended their complaint to remove their challenge to the 1990 Reporting Requirement. In their Amended Complaint (ECF No. 19), Plaintiffs contend that the Department has unreasonably delayed or unlawfully withheld compliance with the 1995 and 2014 Reporting Requirements.

Federal Defendants renew their motion to dismiss because Plaintiffs' amendments do not fix the fundamental flaws raised in the first motion to dismiss. Plaintiffs' claims as to the 1995 and 2014 Reporting Requirements are not materially different from their now dropped claims as to the 1990 reporting requirement and remain non-cognizable under the Administrative Procedure Act ("APA"). First, the reports that BLM submitted to Congress in response to the 1995 and 2014 Reporting Requirements are not "agency actions" that can be compelled under Section 706(1). Second, the BLM submitted each of the reports to Congress and therefore Plaintiffs have failed to allege a genuine failure to act under Section 706(1). Third, Plaintiffs have failed to plead a claim under Section

706(2), but even if they sought to, it would be futile because the challenged reports are not "agency action," final or otherwise, and Plaintiffs' claim would be barred by the statute of limitations. Moreover, Plaintiffs have failed to show how any alleged deficiencies in the reports have caused them injury or how those injuries can be redressed by this Court, and therefore Plaintiffs lack standing to bring their claims.

Because Plaintiffs have no cognizable claims under the APA and do not have standing to bring these claims, Federal Defendants again respectfully request that the Court dismiss this case with prejudice.

## FACTUAL BACKGROUND

Congress enacted ANCSA in 1971 to settle the land claims of Alaska Natives. 43 U.S.C. § 1601(a). Congress recognized that there was "an immediate need for a fair and just settlement of all claims by Natives," 43 U.S.C. § 1601(a), (b), and therefore provided Alaska Natives approximately $962.5 million dollars and 44 million acres of land in exchange for extinguishing their aboriginal land claims. *Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 524 (1998). Congress also directed that the settlement, including the land conveyances, "be accomplished rapidly." 43 U.S.C. § 1601(b).

With ANCSA, Congress facilitated the creation of private, state-chartered corporations to accept settlement benefits and distribute them to Alaska Natives as shareholders of those corporations. *Venetie*, 522 U.S. at 524. ANCSA originally created 220 village corporations, based on Alaska Native populations living in Native villages and some urban areas at the time of ANCSA's passage, that received title to the surface estate of certain lands. 43 U.S.C. § 1610. ANCSA also established twelve regional

corporations formed around twelve regional native associations that existed at ANCSA's passage. 43 U.S.C. § 1606(a). Congress subsequently amended ANCSA to add a thirteenth, landless corporation, in 1975 to represent Alaska Natives that were not permanent residents of Alaska, but who were otherwise eligible to enroll in an Alaska Native regional corporation. 43 U.S.C. § 1606(c). Regional corporations received the subsurface estate of lands received by village corporations and also received their own surface estate entitlement to certain other lands. 43 U.S.C. § 1613(e), (f). The BLM quickly began the process of conveying land under ANCSA with the first such conveyance completed in 1974. *See* Am. Compl. Ex. C, ECF No. 19-3 at 5.[1]

In 1980, almost a decade after ANCSA, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") to address environmental and health risks from industrial pollution. *United States v. Bestfoods*, 524 U.S. 51, 55 (1998). CERCLA empowered the Environmental Protection Agency ("EPA") to clean up hazardous waste and created a liability arrangement to encourage private parties to do the same. *Id*. Under CERCLA, a party can be made to pay cleanup costs if it is, among other things, a current or past owner of contaminated lands. 42 U.S.C. § 9601(20).

As awareness of contaminated lands issues increased, Congress requested that the Department prepare a report on certain contaminated lands conveyed to ANCSA

---

[1] Pagination for exhibits to the Amended Complaint refers to the original document page numbers where the document has page numbers. Where the original document has no page numbers, pagination refers to the exhibit page numbers.

corporations in the Department's 1991 Appropriations Act, enacted on November 5, 1990. Department of the Interior and Related Agencies Appropriations Act, 1991, Pub. L. No. 101-512, 104 Stat. 1913, 1978 (1990), Am. Compl. Ex. A, ECF No. 19-1 at 65 ("1990 Reporting Requirement"). In the Act, Congress requested that the Department provide a report within approximately four months with the following language:

> (a) The Secretary of the Interior is directed to report to Congress by March 1, 1991 the following:
>   (1) Identification of lands and properties that were transferred to Alaska Native Corporations under the Alaska Native Claims Settlement Act as amended, which at the time of transfer were represented or disclosed by the Federal Government as being free from contaminants, and which subsequent to transfer, were discovered to be contaminated; and
>   (2) Identification of lands and properties that the Federal Government knowingly transferred to Alaska Native Corporations with contaminants.
> (b) For the purposes of this section "contaminants" are defined as hazardous substances as described in the Comprehensive Environmental Response, Compensation, and Liability Act, and asbestos as described in the Asbestos Hazard Emergency Response Act.
> (c) Nothing in this section requires the Secretary to conduct an in-the-field survey to determine the presence or absence of contaminants on transferred lands or properties.

*Id*. at § 326.

The Department requested an extension from Congress and submitted its report on April 15, 1991, a little more than five months after passage of the 1991 Appropriations Act. April 15, 1991 ANCSA Contaminated Lands Inventory, Am. Compl. Ex. J, ECF No. 19-12 at 1 ("1991 Report"). The 1991 Report concluded that there were no lands that had been knowingly conveyed to ANCSA corporations with contamination, or that the United States had represented were free from contamination but were subsequently discovered to be contaminated. More specifically, the BLM noted that ANCSA conveyances resulted

from selection applications filed by the corporations themselves; that field investigations were generally not conducted; and that the BLM's files rarely contained information concerning on-the-ground conditions.[2] 1991 Report at 3. As a result, the BLM noted that "[t]o the best of [its] knowledge, no property with contaminants was *knowingly* conveyed to a Native corporation." *Id*. (emphasis added). Furthermore, because no investigation was made, "no representation or disclosure [was] made by the Federal Government regarding hazardous materials." *Id*.

In 1995, Congress requested that the Department prepare another report on ANCSA contamination issues as part of amendments to ANCSA. Alaska Native Claims Settlement Act, Amendments—Hawaiian Home Lands Recovery Act, Pub. L. No. 104-42, 109 Stat. 353, 354 (1995), Am. Compl. Ex. B, ECF No. 19-2 at 3 ("1995 Reporting Requirement"). The 1995 Reporting Requirement stated in relevant part:

> (a) As used in this section the term "contaminant" means hazardous substance harmful to public health or the environment, including friable asbestos.
> (b) Within 18 months of enactment of this section, and after consultation with the Secretary of Agriculture, State of Alaska, and appropriate Alaska Native Corporations and organizations, the Secretary shall submit to the Committee on Resources of the House of Representatives and the Committee on Energy and Natural Resources of the Senate, a report addressing issues presented by the presence of contaminants on lands conveyed or prioritized for conveyance to such corporations pursuant to this Act. Such report shall consist of--
> (1) existing information concerning the nature and types of contaminants present on such lands prior to conveyance to Alaska Native Corporations;

---

[2] While preparing the 1991 Report, the BLM sent letters to over 200 ANCSA corporations in an effort to solicit information from them on what contaminated land they may have received. 1991 Report at 3. Out of those 200 inquiries, the BLM received 22 responses and summarized the content of those responses in its report to Congress. *Id*. at 3-10.

(2) existing information identifying to the extent practicable the existence and availability of potentially responsible parties for the removal or remediation of the effects of such contaminants;

(3) identification of existing remedies;

(4) recommendations for any additional legislation that the Secretary concludes is necessary to remedy the problem of contaminants on the lands; and

(5) in addition to the identification of contaminants, identification of structures known to have asbestos present and recommendations to inform Native landowners on the containment of asbestos.

*Id*. at 3-4. Consistent with its 1990 Reporting Requirement, Congress did not request that the BLM perform any field investigations, but rather noted that the BLM was to prepare its report with "existing information," and include material on "existing remedies." *Id*. at 3. The scale of the task was still massive given the amount of land conveyed to ANCSA corporations by that time—approximately thirty-seven million acres—and the number of entities the BLM was directed to consult in its preparation of the report. *See id*.; Am. Compl. Ex. C, ECF No. 19-3 at 6 ("1998 Report").

The BLM provided the report Congress requested in December 1998. 1998 Report at 2. That report identified several hundred contaminated sites that had been conveyed to ANCSA corporations, which the BLM identified by gathering information from many different federal and state agencies as well as from ANCSA corporations themselves. *Id*. at 6. The 1998 Report noted that ANCSA corporations had been reluctant to participate or provide information on contaminated sites they might own out of concerns that EPA would hold them liable for cleanup costs under CERCLA. *Id*. The report nonetheless responded to each part of Congress's request in the 1995 Reporting Requirement. *Id*. at 9-38. Among other things, the 1998 Report outlined existing and recommended remedies for addressing contamination on ANCSA lands and provided Congress with a minimum

cost estimate for relevant federal agencies to implement such recommendations over a period of three years. *Id*. at 29-38.

In 2014, Congress again requested that the Department provide a report on ANCSA contaminated lands issues in an explanatory statement that accompanied the Consolidated and Further Continuing Appropriations Act, 2015 Appropriations Act. 160 Cong. Rec. H9307, H9760 (2014) (explanatory statement for Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. 113-235, 128 Stat. 2130 (2014)), Am. Compl. Ex. D, ECF No. 19-5 at 455 ("2014 Reporting Requirement"). The 2014 Reporting Requirement stated in relevant part:

> Realty and Ownership Management. - Section 326 of Public Law 101-512 required the Secretary of the Interior to report to Congress on contaminated lands conveyed through the Alaska Native Claims Settlement Act (ANCSA). Section 103 of Public Law 104-42 required the Secretary of the Interior to provide a more detailed report on contaminants on lands prior to conveyance to Alaska Native Corporations. In December 1998, the Department submitted a report to Congress in which it acknowledged conveying approximately 650 contaminated sites on lands conveyed through ANCSA. The Bureau shall provide the House and Senate Committees on Appropriations with a detailed report within 180 days of enactment of this Act, which includes the following information:
>   (1) a comprehensive inventory of contaminated sites conveyed through ANCSA, including sites identified subsequent to the 1998 report;
>   (2) an updated status on the six recommendations listed in the 1998 report; and
>   (3) a detailed plan on how the Department intends to complete cleanup of each contaminated site.

*Id*.

The BLM provided the report on June 22, 2016. Am. Compl. Ex. E, ECF No. 19-7 ("2016 Report"). The 2016 Report identified approximately 1,000 contaminated sites that had been conveyed to ANCSA corporations, although some of these sites were

duplicative, some had been cleaned up already, and some appeared to have been contaminated after conveyance. *Id*. at 24, 31.

The BLM also provided an update on the recommendations it made in 1998. *Id*. at 25-27. In response to Congress's request for a cleanup plan, the BLM noted the Department had no regulatory authority to conduct cleanup activities on non-Departmental lands, such as ANCSA lands. *Id*. at 11. The BLM offered several recommendations for cleanup activities that could be undertaken by agencies with such authority, such as the EPA and the ADEC. *Id*. at 11-12. As part of its report, the BLM created an inventory database for contaminated sites to facilitate action by regulatory agencies with jurisdiction over contaminated lands. *Id*. at 28. The BLM subsequently updated its online inventory in 2019. Am. Compl. ¶ 49 n.8.

In May 2021, State of Alaska officials sent letters to the President and the Secretary of the Interior, demanding that the Department create a plan and clean up contaminated lands conveyed to ANCSA corporations. Am. Compl. Exs. F, G, H, ECF Nos. 19-8, -9, -10. The Department responded to the State's May 2021 correspondence in January 2022. Letter from Senior Advisor to the Secretary for Alaska Affairs and Strategic Priorities, to Commissioner, Alaska Department of Environmental Conservation (Jan. 6, 2022), Am. Compl. Ex. I, ECF No. 19-11 at 2-4.

The State of Alaska and ADEC filed this lawsuit on July 15, 2022, challenging the Department's compliance with the 1990, 1995, and 2014 Reporting Requirements. ECF No. 1. On November 7, 2022, Federal Defendants filed a motion to dismiss, ECF No. 18,

to which Plaintiffs responded by filing an Amended Complaint, ECF No. 19. The Amended Complaint dropped the claims as to the 1990 Reporting Requirement but retained those as to the 1995 and 2014 Requirements—even though the Department complied with all three sets of requirements in the same manner. In response to a joint motion filed by the Parties, this Court denied the motion to dismiss as moot without prejudice to refile. ECF No. 23. Federal Defendants now submit this renewed motion to dismiss the Amended Complaint.

## LEGAL BACKGROUND

The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). "Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) [*SUWA*] (citing 5 U.S.C. § 704). Challenges to agency action are generally brought under § 706(2), which authorizes the reviewing court to hold unlawful and set aside final agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

Section 706(1), however, provides a "limited exception to the finality doctrine" by permitting judicial review of an agency's failure to act. *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999). Under the APA, a court may "compel agency

action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 64. Moreover, such claims can proceed "only when there has been a genuine failure to act." *Ecology Ctr.,* 192 F.3d at 926. Litigants complaining about the sufficiency of an agency action must instead proceed under Section 706(2).

## **STANDARD OF REVIEW**

Federal courts are courts of limited jurisdiction and possess only the power that is authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to seek dismissal of an action for lack of subject matter jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over the claims. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009) (citing *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)). In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to consider evidence regarding jurisdiction and resolve factual disputes where necessary. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. of Civ. P. 12(b)(6) may be based on either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)). In addition, a complaint that fails to provide the grounds for the requested relief beyond labels and conclusions will not survive a motion under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). When a plaintiff fails to assert a cognizable legal theory in support of a claim, the claim must be dismissed. Moreover, while a plaintiff's material factual allegations are assumed to be true, district courts may not assume the truth of legal conclusions "merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (citations omitted). In deciding a motion to dismiss, courts may consider the facts alleged in the complaint, documents either attached to or relied on by the complaint, and facts on which the court may take judicial notice. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

## ARGUMENT

I. **PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED UNDER APA § 706(1) OR, IN THE ALTERNATIVE, THE COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' CLAIMS[3]**

Plaintiffs contend that the Department has unreasonably delayed or unlawfully withheld compliance with two Congressional reporting requirements.[4] Am. Compl. ¶¶ 65, 68, 82. They seek an order under 5 U.S.C. § 706(1) compelling the Department to comply with those reporting requirements. Am. Compl. ¶¶ 76, 87, 97.  But these claims fail because Section 706(1) may only be used to compel "agency action" – a term of art that does not include the Congressional reports Plaintiffs seek to compel here. Even if Section 706(1) could be invoked, Plaintiffs have failed to allege any actionable delay or failure to act by the Department. Plaintiffs concede that the Department long ago submitted reports responding to each of Congress's reporting requirements. Finally, to the extent Plaintiffs

---

[3] Federal Defendants move for dismissal under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) because there are conflicting opinions in the Ninth Circuit regarding whether a deficient claim under § 706(1) of the APA should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6). *Compare Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010) (dismissing deficient APA § 706(1) claim for failure to state a claim), *and Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021) ("Any deficiencies as to the APA claim go to the merits of that cause of action rather than to the subject matter jurisdiction."), *with San Luis Unit Food Producers v. United States*, 709 F.3d 798, 803–04 (9th Cir. 2013) (noting that a deficient Section 706(1) claim may be dismissed for lack of subject matter jurisdiction), *and Eason Land Co., LLC v. U.S. Dep't of the Interior, Sec'y*, 703 F. App'x 498, 500 (9th Cir. 2017) (same).

[4] To the extent Plaintiffs' decision to drop the claims as to the 1990 Reporting Requirement reflects an acknowledgement of their legal infirmity, that same infirmity applies equally to the 1995 and 2014 Requirements. All three requirements requested information from the Department, and the Department complied with all three requirements in the same manner, by submitting the requested report.

take issue with the *adequacy* of those reports, a claim to that effect cannot lie under

Section 706(1). And such a claim could not be alleged under Section 706(2) either, both

because the reports in question are not agency action—final or otherwise—and because

Congress is better suited than the Plaintiffs or this Court to determine whether the reports

are inadequate and what remedy should follow.

### A. Plaintiffs Have Failed to State a Claim Under § 706(1) Because the Reports They Seek to Compel Are Not "Agency Action."

Plaintiffs' claims must be dismissed, as a threshold matter, because the reports that

Plaintiffs are asking this Court to compel are not "agency action" within the meaning of

the APA and, accordingly, they may not be compelled under 5 U.S.C. § 706(1).

An agency's "failure to act" under Section 706(1) of the APA is "properly

understood as a failure to take an *agency action*—that is, a failure to take one of the

agency actions (including their equivalents) earlier defined in § 551(13)." *SUWA*, 542

U.S. at 61-63. Section 551(13) defines an "agency action" as "the whole or a part of an

agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure

to act." 5 U.S.C. § 551(13). The list is "expansive," to be sure, and is "meant to cover

comprehensively every manner in which an agency may *exercise its power*." *See Fund

for Animals v. BLM*, 460 F.3d 13, 19 (D.C. Cir. 2006) (emphasis added) (quoting

*Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 478 (2001)). But federal courts

"have long recognized that the term [agency action] is not so all-encompassing as to

authorize . . . judicial review over everything done by an administrative agency." *Id.*

(alteration in original) (quoting *Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427

(D.C. Cir. 2004)); *accord Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 800-01 (9th Cir. 2013). Among other things, agencies may "prepare proposals, conduct studies, meet with members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs," *Fund for Animals*, 460 F.3d at 20, all without necessarily taking an "agency action" within the meaning of 5 U.S.C. § 551(13).

The reports Congress directed Interior to prepare in this case also are not agency action, and, thus, they cannot be compelled under Section 706(1). Congress did not intend the reports to "implement, interpret, or prescribe" any "law or policy" and, thus, the reports are not "rules." *See* 5 U.S.C. 551(4). The reports also are not "orders," "licenses," "sanctions," or "relief." *See id*. § 551(6), (8), (10), (11). The most that can be said about the reports is that Congress intended them to provide information concerning contaminants, affected lands, potentially responsible parties, and recommendations for addressing the contamination. *See Fund for Animals*, 460 F.3d at 20 (holding that a budget request sent by the BLM to Congress was not "agency action" where "[t]he most that can be said is that it outlines the goals and methods of an administrative program"). Because Plaintiffs do not seek to compel one of the discrete agency actions defined in 5 U.S.C. § 551(13), or their equivalent, Plaintiffs do not assert a cognizable claim under Section 706(1) and their Complaint must be dismissed.

**B. Plaintiffs Have Failed to State a Claim Under § 706(1) Because Interior Has Already Provided to Congress the Reports That Plaintiffs Seek to Compel.**

Even if Section 706(1) could be invoked to compel submission of a report to Congress, such a claim would not lie here because a plaintiff may invoke Section 706(1) only when there has been "a genuine failure to act." *Ecology Ctr.*, 192 F.3d at 926. That is, an agency must have failed to take "a *discrete* agency action that it is *required to take*." *SUWA*, 542 U.S. at 64 (emphasis added). Here, there is no question that Federal Defendants took the specific actions that they were required to take. On three separate occasions, Congress requested that Interior furnish it with a report by a date certain containing information about ANCSA contaminated lands. *See* 1990 Reporting Requirement; 1995 Reporting Requirement; 2014 Reporting Requirement. And the BLM, on behalf of Interior, delivered the reports in 1991, 1998, and 2016, respectively. *See* Am. Compl. ¶¶ 34, 38, 45. Those facts, which are conceded in the Amended Complaint, fully dispose of Plaintiffs' Section 706(1) claims.

At bottom, Plaintiffs do not actually contest that Interior prepared and submitted the 1998 and 2016 reports to Congress; they instead dispute the adequacy of those reports. *See, e.g.*, Am. Compl. ¶ 38 (alleging that, in December 1998, "BLM, on behalf of USDOI, submitted a woefully inadequate report to Congress"). But the Ninth Circuit has rejected claims purporting to challenge "the sufficiency of an agency action 'dressed up as an agency's failure to act.'" *See Ecology Ctr., Inc.*, 192 F.3d at 926; *Nevada v. Watkins*, 939 F.2d 710, 714 n. 11 (9th Cir. 1991); *Viet. Veterans of Am. v. CIA*, No. C 09-0037 CW, 2013 WL 6092031, at *17 (N.D. Cal. Nov. 19, 2013)); *see also Wildearth*

*Guardians v. Chao*, 454 F. Supp. 3d 944, 953 (D. Mont. 2020) (recognizing that a party must proceed under § 706(2)—not § 706(1)—where it challenges, "in effect, the scope and details of [an agency's] limited steps" to comply with its statutory obligation). Because Plaintiffs' challenge is directed at "*how* Defendants carried out their duty, not whether they did so at all," their claims are not properly brought under Section 706(1), and must be dismissed. *See Viet. Veterans of Am.*, 2013 WL 6092031, at \*18; *accord Wildearth Guardians*, 454 F. Supp. 3d at 953, 956. Such claims can be brought, if at all, under 5 U.S.C. § 706(2).

### C. Plaintiffs Also Have No Plausibly Cognizable Claims Under § 706(2).

Plaintiffs have not asserted any claims under Section 706(2), and thus the Court need reach no further to dismiss the Complaint in its entirety. Even if Plaintiffs had asserted such claims, however, they would necessarily fail for three reasons (and thus any further amendment of the complaint would be futile). First, judicial review is unavailable under the APA because neither of the reports in question is "agency action" within the meaning of Section 551(13). The private right of action that Plaintiffs invoke here, contained in Section 702 of the APA, requires the entity claiming a right to sue to direct its challenge against "some 'agency action' that affects [it] in the specified fashion," because "it is judicial review 'thereof' to which [it] is entitled." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). Plaintiffs cannot satisfy that requirement for the same reasons explained in Section I.A. *supra* – none of the three reports to Congress is a "rule, order, license, sanction, relief, or the equivalent or denial thereof." 5 U.S.C.

§551(13). *See Fund for Animals*, 460 F.3d at 20 (holding that a budget request to Congress was not "agency action").

Second, even assuming the reports were "agency action," any challenge under Section 706(2) would necessarily fail for lack of finality. Under Section 704 of the APA, absent a statute requiring otherwise, only "final agency actions" are subject to judicial review. 5 U.S.C. § 704. To be "final", an agency action must (1) "mark the consummation of the agency's decisionmaking process," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citations and quotation marks omitted). But the Ninth Circuit has consistently held that agency responses to Congressional reporting requirements are not "final" agency actions, particularly when they are "purely informational." *See Renee v. Duncan*, 686 F.3d 1002, 1016-17 (9th Cir. 2012); *Guerrero v. Clinton*, 157 F.3d 1190, 1195 (9th Cir. 1998). This is so because such reports "trigger[] no legal consequences and determine[] no rights or obligations." *Guerrero*, 157 F.3d at 1195. In such circumstances, no judicial "check" on the "substance of the report is necessary"; "[h]aving requested the report, Congress, not the judiciary, is in the best position to decide whether it's gotten what it wants." *Id.* Because the reports in this case are also "purely informational" and trigger no legal consequences, they cannot satisfy the APA's finality requirement.

Third, any Section 706(2) claim challenging the sufficiency of the reports would also be barred by the general six-year statute of limitations applicable to actions against

the United States. 28 U.S.C. § 2401(a); *see also Shiny Rock Min. Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990). Claims under the APA must be brought within six years of when a "right of action first accrues." 28 U.S.C. § 2401(a). But Interior submitted both of the challenged reports to Congress more than six years before Plaintiffs initiated this lawsuit on July 15, 2022. *See* 1998 Report (submitted in December 1998); 2014 Report (submitted on June 22, 2016). And as the Ninth Circuit has explained, plaintiffs cannot rely on § 706(1) in "an attempt to end run around" the "insurmountable problem" that a "better phrased . . . claim . . . based on § 706(2) [] is barred by the statute of limitations." *Hells Canyon Pres. Council*, 593 F.3d at 933.

Fourth and finally, separation of powers concerns weigh against judicial review of Interior's compliance with Congressional reporting requirements. Reports to Congress are "quite distinct from the prototypical exercise of agency power." *Nat. Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 318 (D.C. Cir. 1988). An agency's exercise of a legislative function (via rulemaking) or an adjudicatory function affects the "the lives and liberties of the American people," and for this reason "Congress has seen fit to provide broadly for judicial review of those actions." *Id*. By contrast, when an agency responds to a Congressional reporting requirement, it is Congress, and not the courts, that is best positioned to measure "the fidelity of the Executive Branch actor to the legislatively mandated requirements." *Id*. As both the Ninth and D.C. Circuit have recognized, it falls most logically to Congress, the recipient of the reports, to assess their adequacy and to take what it deems to be appropriate corrective action. *See Guerrero*, 157 F.3d at 1195-

96; *Hodel*, 865 F.2d at 318-19. And it goes without saying that "the most representative branch is not powerless to vindicate its interests or ensure Executive fidelity to Legislative directives." *Hodel*, 865 F.2d at 318-19.

For all these reasons, any attempt by Plaintiffs to further amend their complaint and add claims under Section 706(2) would be futile, and their Amended Complaint should be dismissed with prejudice.

## II.    PLAINTIFFS LACK STANDING

Plaintiffs also lack standing to bring their claims because they have failed to allege any injury traceable to BLM's reports to Congress or redressable by this Court. "Article III of the Constitution confines the jurisdiction of the federal courts to actual 'Cases' and 'Controversies,' and . . . 'the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.'" *Clinton v. City of New York*, 524 U.S. 417, 429-430 (1998) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). Federal courts must consider whether plaintiffs, including states acting in their sovereign capacity, have standing in every case. *State of Nev. v. Burford*, 918 F.2d 854, 856 (9th Cir. 1990). As the plaintiff, the State bears the burden of demonstrating that it has standing to pursue its claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Standing requires that a plaintiff be able to establish: "(1) an actual or threatened injury, (2) which is fairly traceable to the defendant's allegedly unlawful conduct, and (3) which is likely to be redressed by the relief requested." *Burford*, 918 F.2d at 856 (citations omitted). Plaintiffs lack standing because: 1) their injury is not traceable to the

BLM's conduct; and 2) Plaintiffs' injury will not be redressed by their request that the BLM prepare another report.

First, Plaintiffs cannot establish an injury stemming from the BLM's reports because the harms Plaintiffs allege they have suffered are traceable to the contaminated lands themselves, not the sufficiency of the reports. *See* Am. Compl. ¶ 4 (alleging injuries from "historical contamination on ANCSA Lands"). As to the 1995 Reporting Requirement, Plaintiffs allege that the "BLM's failure to follow Congress's 1995 Directive has significantly injured Alaska and Alaska Natives."[5] *Id.* ¶ 43. They allege that the "BLM's failure has frustrated Alaska and Alaska Native's abilities to fully and fairly remedy the contamination of ANCSA Lands." *Id.* ¶ 43. Plaintiffs also allege that the "BLM's inaction has allowed hazardous substances and contamination to move and spread through Alaska's surface waters, groundwater, and natural resources." *Id.* ¶ 43. However, Plaintiffs fail to explain how the BLM's alleged "failure" or "inaction" with respect to the reports submitted to Congress has caused these injuries. This is fatal to their claims because, even at the pleading stage, Plaintiffs must "clearly . . . allege facts demonstrating" each element of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration in original).

---

[5] Alaska Native individuals and ANCSA corporations are not a party to this suit; therefore, to the extent that Plaintiffs believe they can bootstrap their way into court based on alleged injuries to Alaska Native individuals or ANCSA corporations stemming from BLM's reports to Congress, they are mistaken. *See Massachusetts v. Mellon*, 262 U.S. 447, 485 (1923). In any event, BLM's reports have not harmed Alaska Native individuals or ANCSA corporations for the same reasons they have not harmed the State: the reports themselves merely provided information requested by Congress.

Insofar as Plaintiffs allege that their injury is traceable to Federal Defendants' alleged failure to take action to remediate contamination on ANCSA lands, that contention relies on a mistaken presumption that Congress has in some way mandated the Department or the BLM take such action. *See, e.g.*, Am. Compl. ¶ 6 (stating that Congress "has directed the Executive Branch to take steps to address [the adverse impacts of the ANCSA Lands' contamination]"); *Id.* ¶ 7 (complaining that the United States "has taken no meaningful steps to remedy contamination on ANCSA Lands that it pawned off on Alaska Natives"). While Plaintiffs allege that "Congress has spoken repeatedly, unequivocally memorializing the United States' obligation to investigate, address, and remediate the historical contamination on ANCSA Lands . . .," *Id.* ¶ 57, no such obligations appear in the Congressional reporting requirements at issue in this case. The only thing Congress "memorialized" was Interior's obligation to submit reports to Congress, which it did. *See* 1995 Reporting Requirement (requiring Interior to submit a report detailing what contaminated lands were transferred under ANCSA and including "recommendations for any additional legislation that the Secretary concludes is necessary to remedy the problem of contaminants on the lands"); 2014 Reporting Requirement (directing Interior to submit a similar report including "a detailed plan on how the Department intends to complete cleanup of each contaminated site"). And the requirement to submit a report, even one that provides a remediation plan, does not confer a duty to execute that plan. *See Am. Small Bus. League v. Contreras-Sweet*, 712 F. App'x 667, 667-68 (9th Cir. 2018) (explaining that even though agency must include a

"remediation plan" in its report to the President and Congress, "there is no statutory obligation to follow the formulated plan").

Second, Plaintiffs do not explain how the submission of another report will remedy their injuries. Plaintiffs request "an order compelling the United States to comply with" Congress's reporting requirements. Am. Compl. ¶ 97. But as the Ninth Circuit has repeatedly held, "a federal court [cannot] redress an injury based on an allegedly inadequate report that an agency is obligated to file with Congress." *Renee*, 686 F. 3d at 1016 (citing *Guerrero*, 157 F.3d at 1194). As in *Renee* and *Guerrero*, "the reporting requirement [that Plaintiffs] seek to enforce is 'purely informational.'" *Id*. at 1017. "Nothing in [the Reporting Requirements] provides that the [BLM's] reports to Congress have any legal consequences." *Id*. "Therefore, the relief requested (a better report) cannot make any legal difference that will redress the [plaintiffs'] injury from" the contaminated lands. *Guerrero*, 157 F.3d at 1195 (citing *Steel Co. v. Citizens For a Better Env't*, 118 S. Ct. 1003, 1019 (1998)).

In sum, Plaintiffs have also failed to demonstrate that they have standing and this Court may dismiss their claims on that additional basis.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' claims are all subject to dismissal for failure to state a claim upon which relief can be granted and/or lack of subject matter jurisdiction under the APA, as well as for lack of standing. Therefore, Federal Defendants respectfully request that the Court dismiss this action with prejudice.

DATED: December 21, 2022.

TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Div.

*/s/ Shannon Boylan*
SHANNON BOYLAN (D.C. Bar No. 1724269)
Trial Attorney
Natural Resources Section
Environment and Natural Resources Div.
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
202-598-9584
202-305-0506 (fax)
shannon.boylan@usdoj.gov

*Counsel for Federal Defendants*