TODD KIM
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

**SHANNON BOYLAN** (DC Bar No. 1724269)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 598-9584
Facsimile: (202) 305-0275
Email: Shannon.Boylan@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| THE STATE OF ALASKA; AND THE ALASKA DEPARTMENT OF ENVIRONMENTAL CONSERVATION,<br><br>                 Plaintiffs,<br>  v.<br><br>UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as Secretary of the United States Department of the Interior; BUREAU OF LAND MANAGEMENT; AND TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management,<br><br>                 Defendants. | Case No. 3:22-cv-00163-HRH<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

# INTRODUCTION

Plaintiffs' Response to Defendants' Motion to Dismiss does not rectify the fundamental flaw underlying their claims—Plaintiffs ask this Court to compel the Department of the Interior ("Interior") and the Bureau of Land Management ("BLM") to take actions they have already taken. Having waited until after the applicable statute of limitations to bring a claim under Section 706(2) of the Administrative Procedure Act ("APA") had run (a claim that would not have been cognizable under 706(2) anyway), Plaintiffs now seek to improperly attack the adequacy of BLM's reports under the guise of a Section 706(1) claim. But Section 706(1) cannot be used to compel BLM's reports because they are not agency action, *see* Defs.' Mot. to Dismiss, ECF No. 24 ("Mot.") at 13-14, and even if they were, BLM has already submitted the required reports. Plaintiffs cannot avoid this result by pointing to alleged deficiencies in the reports because such deficiencies are pertinent only to a claim under 706(2)—and Plaintiffs concededly have not brought, and could not have brought, such a claim. Pls.' Resp., ECF No. 25 ("Pls. Br.") at 28 n.15. Moreover, the statements made in the 1998 Report to Congress are not enforceable against the agency because they lack the force or effect of law.

For the same reasons, Plaintiffs lack standing. Plaintiffs' alleged injuries are not traceable to BLM's alleged failure to submit the required reports because BLM did in fact submit the reports. What Plaintiffs seek are better reports but this Court lacks authority under Section 706(1) to provide such relief.

Because Plaintiffs have no cognizable claims under the APA and lack standing to bring these claims, Federal Defendants ask the Court to dismiss this case with prejudice.

## ARGUMENT

### I. PLAINTIFFS DO NOT RESPOND TO DEFENDANTS' ARGUMENT THAT THEY HAVE NO COGNIZABLE CLAIMS UNDER APA SECTION 706(2) AND THUS CONCEDE IT.

While Plaintiffs' First Amended Complaint does not assert any claims under Section 706(2) of the APA, many of Plaintiffs' arguments appear directed at perceived inadequacies in the 1998 and 2016 reports to Congress, rather than the Section 706(1) question of whether BLM took the action required by statute. Because such claims must be pursued under Section 706(2) instead of 706(1), any such claims would necessarily fail as a matter of law, as Federal Defendants explained in their opening brief. To summarize, Defendants explained that the APA provides for judicial review only of final agency action but neither of the reports is agency action within the meaning of 5 U.S.C. § 551(13), much less *final* agency action within the meaning of 5 U.S.C. § 704. *See* Mot. at 16-17. And, because the relevant reports were issued in 1998 and 2016, respectively, any attempt to challenge their adequacy under Section 706(2) would be barred by the general six-year statute of limitations. *See* Mot. at 17-18. Finally, because the reports in question were submitted to Congress at Congress's request, Congress is best situated to assess their adequacy and thus separation of powers concerns separately weigh against any *judicial* review of the reports. *See id.* at 18-19.

In response, Plaintiffs concede that they have not raised a Section 706(2) claim, *id.* at 28 n.15, thereby allowing the Court to disregard any attempts by Plaintiffs to imply such

a claim. Moreover, to the extent Plaintiffs engage with Federal Defendants' 706(2) arguments, it is only to contend that the reports are "agency action." Plaintiffs decline to respond to any other of Defendants' arguments, including the dispositive statute of limitations. Accordingly, Plaintiffs have waived those issues, thus conceding that no cognizable claim may lie in this case under Section 706(2).

## II. PLAINTIFFS HAVE NO COGNIZABLE CLAIMS UNDER APA SECTION 706(1).

The First Amended Complaint asserts under APA Section 706(1) that Defendants have unreasonably delayed (or unlawfully withheld) the submission of reports in compliance with the 1995 and 2014 Congressional Reporting Requirements. The First Amended Complaint, however, concedes that Interior prepared and submitted the 1998 and 2016 Reports to Congress, in response to the 1995 and 2014 requirements, and this alone precludes Plaintiffs' claims.

As Defendants have explained, *see* Mot. at 15-16, a plaintiff may invoke Section 706(1) only when there has been "a genuine failure to act." *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 926 (9th Cir. 1999). Where, as here, Plaintiffs' challenge is directed at "how Defendants carried out their duty, not whether they did so at all," their claims are not properly brought under Section 706(1) and must be dismissed. *See Viet. Veterans of Am. v. CIA*, No. C 09-0037 CW, 2013 WL 6092031, at *18 (N.D. Cal. Nov. 19, 2013); *accord WildEarth Guardians v. Chao*, 454 F. Supp. 3d 944, 953 (D. Mont. 2020). This limitation is also particularly important here because Plaintiffs waited longer than the six-year limitations period to file the original Complaint. Defendants are thus

entitled to repose concerning any challenges to the adequacy of the reports. Having missed their window to file such challenges under Section 706(2), Plaintiffs cannot pursue the same claim "dressed up as an agency's failure to act." *See Ecology Ctr., Inc.*, 192 F.3d at 926 (quoting *Nevada v. Watkins*, 939 F.2d 710, 714 n.11); *see also Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010) (explaining that plaintiffs cannot rely on § 706(1) in "an attempt to end run around" the "insurmountable problem" that a "better phrased . . . claim . . . based on § 706(2) [] is barred by the statute of limitations.").

### A. Commitments Allegedly Made in the 1998 Report Are Not Enforceable Under Section 706(1).

In response to the above arguments, Plaintiffs first contend that their First Amended Complaint seeks to compel actions that Interior allegedly committed to taking in the 1998 Report. This argument fails for two fundamental reasons. First, the First Amended Complaint does not, in fact, assert a 706(1) claim with respect to alleged "commitments" in the 1998 Report. Each of the enumerated causes of action instead focus narrowly on "the Congressionally mandated obligations set forth in the 1995 Directive and 2014 Directive." *See* First Am. Compl. ¶¶ 76-77, 87-88, 94-95, ECF No. 19 (Plaintiffs refer to the Congressional actions at issue as "Directives," while Defendants refer to them as "Reporting Requirements"). Similarly, the Prayer for Relief seeks an order directing compliance only with the 1995 and 2014 Directives—and not with any obligations allegedly flowing from the 1998 Report. *See* ¶¶ 96-97.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS 4
Case No. 3:22-cv-00163-HRH
Case 3:22-cv-00163-HRH   Document 31   Filed 02/08/23   Page 5 of 14

Second, even if the First Amended Complaint asserted such a claim, it would fail as a matter of law because the commitments allegedly made in the 1998 Report are not actions the agency is "required to take" (a step Plaintiffs entirely ignore in their brief) and therefore are not enforceable under section 706(1) of the APA.[1] Neither the text, procedural context, nor the cases cited by Plaintiffs support their arguments.

The text of BLM's statements in the 1998 Report makes clear that—far from committing itself to discrete actions—BLM was making recommendations for Congress' consideration and action. This is best demonstrated by the 1998 Report's discussion of the funding required for BLM and other agencies to implement the recommendations. Am. Compl. Ex. C, ECF No. 19-3 at 40-43. Had Congress wished for those statements to be legally binding obligations on BLM, it would have made them so. Congress did not. The 1998 Report also noted that while Interior would coordinate the recommendations, "other agencies . . . may take the lead in certain aspects of the recommendations." *Id.* at 7. BLM's lack of authority to bind other agencies (and indeed Plaintiffs do not seek to compel these recommendations against those other agencies in this suit) further affirms the recommendations were not intended to be, and were not, binding obligations.

And none of the actions described in the text of BLM's statements were "discrete" such that they could be compelled under *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 66-67 (2004) [*SUWA*]. The 1998 Report merely stated that Interior would "coordinate

---

[1] By making this argument Defendants do not concede that any commitments made in the 1998 Report are unfulfilled.
FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS       5
Case No. 3:22-cv-00163-HRH

implementation" of the recommendations. Am. Compl. Ex. C, ECF No. 19-3 at 7. This generic coordination is the kind of broad programmatic mandate the Supreme Court found unenforceable in *SUWA*. *SUWA*, 543 U.S. at 66-67.

The procedural context in which those statements were made further shows they were not intended to be, and could not be, legally binding obligations. Plaintiffs' arguments here presume that the 1998 Report is a "rule" or "equivalent thereof" within the meaning of 5 U.S.C. § 551(4), and that this Court may review Interior's failure to abide by its rules. Pls. Br. at 20-21. The Ninth Circuit, however, has long held that, "[t]o have the force and effect of law enforceable against an agency in federal court, [an] agency pronouncement must (1) prescribe substantive rules – not interpretive rules, general statements of policy[,] or rules of agency organization, procedure or practice – and; (2) conform to certain procedural requirements." *United States v. Fifty-Three (53) Eclectus Parrots*, 685 F.2d 1131, 1136 (9th Cir. 1982) (internal quotation marks omitted); *accord Lowry v. Barnhart*, 329 F.3d 1019, 1022 (9th Cir. 2003); *United States v. Alameda Gateway Ltd.*, 213 F.3d 1161, 1168 (9th Cir. 2000). If Interior had intended the 1998 Report to be a binding substantive rule, as Plaintiffs seek to characterize it, Interior would have published a notice of the proposed Report in the Federal Register, 5 U.S.C. § 553(b); received public comment on the proposed Report, *id*. § 553(c); and published the final Report in the Federal Register not less than 30 days prior to its effective date. *See* 5 U.S.C. § 553(d). Because Interior undertook none of those steps, it follows that it did not intend to, and indeed the 1998 Report cannot, establish judicially enforceable rights and

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS  6
Case No. 3:22-cv-00163-HRH
Case 3:22-cv-00163-HRH   Document 31   Filed 02/08/23   Page 7 of 14

obligations. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 312 (1979) ("Certainly regulations subject to the APA cannot be afforded the 'force and effect of law' if not promulgated pursuant to the statutory procedural minimum found in that Act.").

Neither do the cases from the land use planning procedural context cited in Plaintiffs' brief supports their arguments, *see* Pls. Br. at 20, both because land use plans are promulgated in accordance with stringent procedural requirements laid out in the Bureau of Land Management's regulations, *see* 43 C.F.R. Pt. 1600 and Subpart 1610, and because the Federal Land Policy and Management Act ("FLPMA") and its implementing regulations independently require that all management actions on federal public lands conform with an approved plan. 43 U.S.C. § 1732(a); *see also* 43 C.F.R. § 1610.5–3(a) (2003) ("All future resource management authorizations and actions . . . and subsequent more detailed or specific planning, shall conform to the approved plan"). Thus, *Friends of Animals v. Sparks* merely stands for the proposition that agency actions may be judicially reviewed against commitments in a land use plan. 200. F. Supp. 3d 1114, 1125-26 (D. Mont. 2016) (holding that agency's excess wild horse determination was arbitrary and capricious where it was predicated on an outdated "appropriate management level" for wild horses that the agency had failed to recalculate in violation of the governing land use plan). Meanwhile, *SUWA*, 542 U.S. at 71-72, and *Oregon Nat. Desert Ass'n v. Bushue*, No. 3:19-cv-1550-SI, 2022 WL 17487065 (D. Or. Dec. 7, 2022), merely address whether and when particular commitments in a valid land use plan may be enforced under Section 706(1). Because the 1998 Report is not an approved land use plan under FLPMA, none of these

cases support Plaintiffs' contention that the alleged commitments made in the Report are judicially enforceable under 706(1).

And the other cases cited by Plaintiffs do not require a different result. For example, the court in *Trout Unlimited v. Lohn* was charged with determining whether an internal policy, which directed agency personnel to consider certain factors when listing Pacific salmon under the Endangered Species Act, was "final" and thus subject to judicial review under the APA. No. C05-1128C, 2005 WL 3242262, at *4 (W.D. Wash. Nov. 30, 2005). In that context, the Court applied the familiar two-step finality test, *viz.*, (1) whether the policy marked the consummation of the agency's decision-making process, and (2) whether the action is one from which legal consequences flow. *Id.* And it concluded as to the second prong that the policy indeed caused legal consequences because it gave certain mandatory direction to agency *personnel*. *Id.* at 5. The court did not hold, however, that the policy in question could be enforced against the agency though a Section 706(1) claim – nor could it have, in light of *Fifty-Three (53) Eclectus Parrots* and its progeny.

Plaintiffs' reliance on *Farrell v. U.S. Dep't of Interior*, 314 F.3d 584, 591 (Fed. Cir. 2002), is similarly unavailing. There, the Federal Circuit distinguished between agency pronouncements that purport to bind the public and those that purport to bind the agency itself, and it concluded that only the former requires compliance with the procedural requirements of the APA. *Id.* at 590-91. As for the latter, it concluded that an agency pronouncement may be binding on the agency itself if the agency intended that result. *Id.* at 591. The Ninth Circuit has made clear that the holding in *Fifty-Three (53) Eclectus*

*Parrots* applies when a litigant seeks to bind the agency to an agency pronouncement. *See Alameda Gateway Ltd.*, 213 F.3d at 1167-68 (holding that the "Engineering Regulation" at issue in the case was not binding on the defendant agency because it did not satisfy the *Fifty-Three (53) Eclectus Parrots* test); *Fifty-Three (53) Eclectus Parrots*, 685 F.2d at 1136 (holding that a publication requirement in a U.S. Customs Manual could not be enforced against the agency because the manual was an "internal agency guide" and "it was not intended for the use of the general public").

### B. Plaintiffs' 706(1) Challenge Regarding the 2014 Reporting Requirement Must Be Dismissed Because Plaintiffs Do Not Challenge a Genuine Failure to Act.

Plaintiffs' arguments regarding the 2016 Report, submitted in response to the 2014 Reporting Requirement, suffer the same flaws. As Federal Defendants have explained, BLM submitted the requested report to Congress on June 22, 2016. *See* Am. Compl. Ex. E, ECF No. 19-7. Thus, Plaintiffs have no claim that BLM failed to comply with the 2014 Reporting Requirement; their concern is that the 2016 Report is inadequate under the 2014 Reporting Requirement. *See* Pls. Br. 22-23, 25-26 (alleging that the 2016 Report does not constitute a "comprehensive inventory" or "detailed plan" as required by the 2014 Directive). Such a claim properly arises under Section 706(2) of the APA because it seeks to evaluate the substance of the agency action rather than compel an action not taken in the first instance. As noted above, Plaintiffs concede they have not brought a Section 706(2) claim. Regardless, any such claim would be meritless because as Defendants explained, it is up to Congress to judge whether the 2018 Report is "comprehensive" or its recommended plan is sufficiently "detailed." Mot. at 18-19.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS 9
Case No. 3:22-cv-00163-HRH
Case 3:22-cv-00163-HRH     Document 31     Filed 02/08/23     Page 10 of 14

*In re Pub. Emps. for Env't. Resp.*, 957 F.3d 267, 269 (D.C. Cir. 2020), does not support Plaintiffs' position. There, Plaintiffs sought to compel agencies to create air tour management plans to regulate commercial air tours over certain national parks as required by the Air Tour Management Act of 2000. The difference between that case and this one is that there, the agencies had not prepared the relevant plan in any form. Therefore, plaintiffs sought to compel "the *creation* of the plans" rather than review the "*content*" of the plans. 957 F.3d at 273 (emphasis in original). Here, BLM submitted the required report but Plaintiffs are not satisfied with its content. Because Interior has already issued a Report in response to the 2014 Directive, and because Interior intended that Report to be its full response, the adequacy of that response could only plausibly be reviewed under 706(2).

*In re A Cmty. Voice*, 878 F.3d 779, 783 (9th Cir. 2017), and *Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot, Agency*, 956 F.3d 1134, 1140, 1142-43 (9th Cir. 2020), are similarly distinguishable. In both cases, EPA failed to take a statutorily required action, although it noted that it had done "some work" on the relevant issues in the interim. *In re A Cmty. Voice*, 878 F.3d at 783. Here, in contrast, Interior has fully complied with the 2014 Directive by submitting the 2016 Report; there is nothing more that the 2014 Reporting Requirement requires Interior to do. Thus, again, Plaintiffs' true concern is with the content and adequacy of the 2016 Report, which can be reviewed only under 706(2), if at all.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS    10
Case No. 3:22-cv-00163-HRH
Case 3:22-cv-00163-HRH   Document 31   Filed 02/08/23   Page 11 of 14

## III. PLAINTIFFS LACK ARTICLE III STANDING TO BRING THEIR CLAIMS

Plaintiffs' standing argument fails for the same reasons as its 706(1) argument—Plaintiffs seek to trace their alleged injuries to BLM's failure to take "multiple discrete agency actions" even though, as explained above and in Federal Defendants' motion, BLM has complied with the cited directives. Pls. Br. at 31. In fact, Plaintiffs seek to trace their alleged injuries to the purportedly inadequate content of those reports. But under 706(1), this Court does not have authority to compel *better* reports; rather, it can only—at most—compel an agency to issue a report, *if* its issuance is a discrete agency action that an agency is required to take, and the agency has not taken it. And, as discussed above, the Court cannot compel Interior to take actions based on the content of its 1998 Report as it does not have the force and effect of law. Therefore, Plaintiffs' alleged injuries are not redressable.

To the extent Plaintiffs argue that the reports have deprived them of information necessary to perform certain duties, *see* Pls. Br. 32 & n.20, that argument again goes to the adequacy of the content of the reports, which this Court has no authority to review under either 706(1) or 706(2). Even putting aside that fatal flaw, to establish informational injury, a plaintiff must establish that "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray*, 424 F. Supp. 3d 26, 30 (D.D.C. 2020), aff'd, 848 F. App'x 428 (D.C. Cir. 2021). As in *Lawyers'*

*Committee*, the relevant 2014 Reporting Requirement is contained not in statutory text but in an explanatory statement accompanying the 2015 Appropriations Act. Such an explanatory statement is not equivalent to a disclosure requirement that has the force and effect of law. *See* 424 F. Supp. 3d at 30-32. This is in contrast to *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998), and *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989), which both address whether plaintiffs had standing to compel the release of information under transparency, recordkeeping, and disclosure statutes that mandated disclosure to the public. *Akins*, 524 U.S. at 20-25; *Pub. Citizen* 491 U.S. at 440.

And even if the Reporting Requirements had the necessary legal force, they do not require the disclosure of information to *Plaintiffs* as is required for informational injury but instead require disclosure only to Congress. And because the Reporting Requirements did not require disclosure to the public, Plaintiffs cannot allege that they suffer "the type of harm Congress sought to prevent by requiring disclosure." *Lawyers' Comm.*, 424 F. Supp. 3d at 30.

In sum, because Plaintiffs' alleged injuries do not stem from BLM's compliance, or alleged lack thereof, with the 1995 and 2014 Reporting Requirements, and are in any case not redressable by this Court, Plaintiffs lack standing to bring their claims. *Renee v. Duncan*, 686 F.3d 1002, 1016 (9th Cir. 2012) ("a federal court [cannot] redress an injury based on an allegedly inadequate report that an agency is obligated to file with Congress." (citing *Guerrero v. Clinton*, 157 F.3d 1190, 1194 (9th Cir. 1998)).

Therefore, Plaintiffs' claims should be dismissed with prejudice.

DATED: February 8, 2023.

                                            TODD KIM
                                            Assistant Attorney General
                                            United States Department of Justice
                                            Environment and Natural Resources Div.

                                            */s/ Shannon Boylan*
                                            SHANNON BOYLAN (D.C. Bar No. 1724269)
                                            Trial Attorney
                                            Natural Resources Section
                                            Environment and Natural Resources Div.
                                            United States Department of Justice
                                            P.O. Box 7611
                                            Washington, D.C. 20044
                                            202-598-9584
                                            202-305-0506 (fax)
                                            shannon.boylan@usdoj.gov

                                            *Counsel for Federal Defendants*

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS     13
Case No. 3:22-cv-00163-HRH
Case 3:22-cv-00163-HRH   Document 31   Filed 02/08/23   Page 14 of 14