IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THE STATE OF ALASKA; and the ALASKA )
DEPARTMENT OF ENVIRONMENTAL )
CONSERVATION, )
          )
                   Plaintiffs, )
          )
     vs. )
          )
UNITED STATES OF AMERICA; UNITED )
STATES DEPARTMENT OF THE )
INTERIOR; DEB HAALAND, in her official )
capacity as Secretary of the United States )
Department of the Interior; BUREAU OF )
LAND MANAGEMENT; and TRACY )
STONE-MANNING, in her official capacity as )
Director of the Bureau of Land Management, )
          )    No. 3:22-cv-0163-HRH
                   Defendants. )
_____ )

<u>O R D E R</u>

<u>Motion to Dismiss First Amended Complaint</u>

       Defendants move to dismiss[1] plaintiffs' first amended complaint.[2] This motion is

opposed.[3] Oral argument has not been requested and is not deemed necessary.

---

   [1]Docket No. 24.

   [2]Docket No. 19.

   [3]Docket No. 25.

ORDER – Motion to Dismiss First Amended Complaint              **-** 1 **-**

Plaintiffs are the State of Alaska and the Alaska Department of Environmental Conservation ("DEC"). Defendants are the United States of America; the United States Department of the Interior ("DOI"); Deb Haaland, in her official capacity as the Secretary of the United States Department of the Interior; the Bureau of Land Management ("BLM"); and Tracy Stone-Manning, in her official capacity as the Director of BLM.

"In 1971, Congress enacted the Alaska Native Claims Settlement Act ('ANCSA'), to create a fair and just settlement of all claims by Natives and Native groups of Alaska, based on aboriginal land claims[.]'"[4] "Through ANCSA, the United States sought to extinguish all Alaska Natives' claims to aboriginal title to over 360 million acres of land in Alaska, in exchange for title to a designated 44 million acres of land ('ANCSA' Lands')[5] and "nearly $1 billion in federal funds." Leisnoi, Inc. v. Stratman, 154 F.3d 1062, 1064 (9th Cir. 1998). "ANCSA created a system of 'Regional Corporations' and 'Villages' to which BLM would convey the ANCSA Lands and award the monetary compensation for subsequent distribution to member Alaska Natives."[6]

Plaintiffs allege that the corporate entities were obliged "to select the lands from basic maps and/or surveys, without any detailed information on the land's prior use, then-existing contamination, and related limitations on potential future land use."[7] Plaintiffs further allege

---

[4]First Amended Complaint at 2, ¶ 1, Docket No. 19 (quoting 43 U.S.C. § 1601(a)).

[5]Id.

[6]Id. at 8, ¶ 23.

[7]Id. at 9, ¶ 25.

ORDER – Motion to Dismiss First Amended Complaint      - 2 -

that "[s]ome of these ANCSA Lands were subsequently transferred to the State of Alaska."[8] Plaintiffs allege that "[l]egacy pollution has persisted in the environment on and has emanated from contaminated ANCSA Lands for decades, and has impeded Alaska Natives and the State of Alaska from putting ANCSA Lands to efficient economic and beneficial use."[9] Plaintiffs allege that instead of fulfilling "the purpose and bargain of ANCSA[,]" the United States had "foisted the economic, social, environmental, and health burdens and costs of historical contamination on Alaska and Alaska Natives."[10] Plaintiffs allege that "[f]or over thirty years, Alaska, the ANCs, and the Villages have continuously raised concerns over the adverse impacts of the contaminated ANCSA Lands and requested that the United States remedy the wrong it created by saddling Alaska Natives with the contaminated lands."[11] To that end, plaintiffs allege that "Congress has issued at least three directives ordering the []DOI and/or BLM to identify ANCSA Lands that were contaminated before the transfer to Alaska Natives and Alaska, investigate the scope and extent of the contamination, and prepare plans for the remediation of the contaminated ANCSA Lands."[12]

The first directive was in 1990.[13] In Section 326 of the Department of the Interior and Related Agencies Appropriations Act, 1991, the Secretary was

directed to report to Congress by March 1, 1991 the following:

---

[8] Id. at 9, ¶ 26.

[9] Id. at 9, ¶ 27.

[10] Id. at 10, ¶ 29.

[11] Id. at 10, ¶ 31.

[12] Id. at 10, ¶ 32.

[13] Id. at 10, ¶ 33.

ORDER – Motion to Dismiss First Amended Complaint                    - 3 -

> (1) Identification of lands and properties that were transferred to Alaska Native Corporations under the Alaska Native Claims Settlement Act as amended, which at the time of transfer were represented or disclosed by the Federal Government as being free from contaminants, and which subsequent to transfer, were discovered to be contaminated; and
>
> (2) Identification of lands and properties that the Federal Government knowingly transferred to Alaska Native Corporations with contaminants.[14]

Section 326 provided that the Secretary was not required "to conduct an in-the-field survey to determine the presence or absence of contaminants on transferred lands or properties."[15]

On April 15, 1991, the Secretary delivered an eight-page report to Congress.[16] The report was largely based on 22 responses that BLM had received from ANCs.[17] In the 1991 report, BLM represented that "to the best of [its] knowledge, no property with contaminants was knowingly conveyed to a Native corporation."[18] The 1991 report identified 38 contaminated sites.[19]

The second directive was in 1995.[20] In 1995, Congress amended ANCSA by adding Section 1629f, which provides, in relevant part:

> (b) Within 18 months of November 2, 1995, and after consultation with the Secretary of Agriculture, State of Alaska, and appropriate Alaska Native Corporations and organizations, the Secretary shall submit to the Committee on Resources of the

---

[14]Exhibit A at 65, First Amended Complaint, Docket No. 19.

[15]Id.

[16]Exhibit J at 3-10, First Amended Complaint, Docket No. 19.

[17]Id. at 4.

[18]Id. at 3.

[19]Id. at 5-10.

[20]First Amended Complaint at 11, ¶ 36, Docket No. 19.

ORDER – Motion to Dismiss First Amended Complaint                  - 4 -

House of Representatives and the Committee on Energy and Natural Resources of the Senate, a report addressing issues presented by the presence of contaminants on lands conveyed or prioritized for conveyance to such corporations pursuant to this chapter. Such report shall consist of--

> (1) existing information concerning the nature and types of contaminants present on such lands prior to conveyance to Alaska Native Corporations;
>
> (2) existing information identifying to the extent practicable the existence and availability of potentially responsible parties for the removal or remediation of the effects of such contaminants;
>
> (3) identification of existing remedies;
>
> (4) recommendations for any additional legislation that the Secretary concludes is necessary to remedy the problem of contaminants on the lands; and
>
> (5) in addition to the identification of contaminants, identification of structures known to have asbestos present and recommendations to inform Native landowners on the containment of asbestos.

43 U.S.C. § 1629f.

The Secretary submitted the report required by Section 1629f in December 1998. The 1998 report identified several hundred contaminated sites and noted that "[f]ield investigations are necessary to characterize the nature and extent of contamination and to determine if contamination occurred prior to, or after, conveyance...."[21] As set out in the Executive Summary for the 1998 report, the "report recommend[ed] an approach to fully identify contaminated sites and cleanup needs on ANCSA lands."[22] The 1998 report recommended the following six steps be taken "to fully identify contaminated sites and cleanup needs on ANCSA lands[:]"[23]

---

[21]Exhibit C at 16, First Amended Complaint, Docket No. 19.

[22]Id. at 7.

[23]Id.

ORDER – Motion to Dismiss First Amended Complaint     - 5 -

1.  Establish a forum of ANCSA landowners and Federal, State, local and Tribal agencies for exchanging information, discussing issues, and setting priorities;

2.  Compile a coordinated, comprehensive inventory of contaminated sites with input from all parties;

3.  Apply EPA policies to ANCSA landowners, not to impose landowner liability to federal transferees for contamination existing at the time of conveyance, where the landowner has not contributed to the contamination;

4.  Analyze the data collected and report to Congress on sites not covered in existing programs and recommend whether further Federal programs or actions are needed;

5.  Modify policies, where needed, to address contaminants and structures that may affect public health and safety on ANCSA lands; and

6.  Continue to develop, under the leadership of the EPA and any other relevant agencies, a process to train and enable local residents to better participate in cleanup efforts.[24]

The 1998 report provided that "[t]he Department of the Interior will coordinate implementation of these recommendations, although other agencies such as EPA and the Corps of Engineers may take the lead in certain aspects of the recommendations.

Plaintiffs allege that the 1998 report was "woefully inadequate" and that it "only gave cursory attention to four objectives from the 1995 Directive[.]"[25] Plaintiffs allege that the report only provided "a preliminary inventory of the sites and the suspected contaminants" and that the report "failed to identify the nature of the contamination at each conveyed site."[26] Plaintiffs allege that the 1998 report "provided generalized information, was unhelpful in

---

[24]Id.

[25]First Amended Complaint at 12, ¶ 38; 13, ¶ 40, Docket No. 19.

[26]Id. at 13, ¶ 39.

ORDER – Motion to Dismiss First Amended Complaint                    **- 6 -**

identifying and remedying the contamination, and ignored and failed to comply with the 1995 Directive."[27] Plaintiffs allege that "BLM's failure to follow Congress's 1995 Directive has significantly injured Alaska and Alaska Natives."[28] Plaintiffs allege that "BLM's failure has frustrated Alaska and Alaska Native's abilities to fully and fairly remedy the contamination of ANCSA Lands. BLM's inaction has allowed hazardous substances and contamination to move and spread through Alaska's surface waters, groundwater, and natural resources."[29] Plaintiffs also allege that instead of working to identify potentially responsible parties, "BLM has instead thwarted the identification of potentially responsible parties and investigation of the contamination."[30]

The third directive was in 2014.[31] The 2014 Directive was included in the Joint Explanatory Statement of Public Law 113-235.[32] The 2014 Directive provided:

> Section 326 of Public Law 101-512 required the Secretary of the Interior to report to Congress on contaminated lands conveyed through the Alaska Native Claims Settlement Act (ANCSA). Section 103 of Public Law 104-42 required the Secretary of the Interior to provide a more detailed report on contaminants on lands prior to conveyance to Alaska Native Corporations. In December 1998, the Department submitted a report to Congress in which it acknowledged conveying approximately 650 contaminated sites on lands conveyed through Alaska. The Bureau shall provide the House and Senate Committees on Appropriations with a detailed report within 180 days of enactment of this Act, which includes the following informa- tion: (1) a comprehensive inventory of contaminated sites

---

[27]Id. at 14, ¶ 40.

[28]Id. at 14, ¶ 43.

[29]Id. at 15, ¶ 43.

[30]Id.

[31]Id. at 15, ¶ 44.

[32]Exhibit D, First Amended Complaint, Docket No. 19.

ORDER – Motion to Dismiss First Amended Complaint                    - 7 -

conveyed through ANCSA, including sites identified subsequent to the 1998 report; (2) an updated status on the six recommendations listed in the 1998 report; and (3) a detailed plan on how the Department intends to complete cleanup of each contaminated site.[33]

In 2016, BLM submitted a report in response to the 2014 Directive.[34] The 2016 report identified 920 contaminated sites.[35] The 2016 report provided an update on the six 1998 report recommendations.[36] As explained in the Executive Summary, "a preliminary Contaminated Lands Inventory (CLI) database was established along with a stakeholder group to provide information into and feedback about the database contents," but no other action was taken on the recommendations because "BLM lacks statutory authority to take action...."[37]

Plaintiffs allege that BLM did not "comply with the obligations imposed by the 2014 Directive. Instead, in its update on the status of the 1998 Report recommendations, BLM made clear that it would not assume responsibility for its role in the contamination[.]"[38] Plaintiffs allege that "[t]he information provided in the 2016 Report is vague and lacks specific factual information on the inventoried sites and contamination precisely because []DOI and BLM failed to properly investigate the ANCSA contaminated sites."[39] Plaintiffs further allege that "BLM failed to take the actions necessary to prepare and submit [a]

---

[33]Id.

[34]Exhibit E, First Amended Complaint, Docket No. 19.

[35]Id. at 17.

[36]Id. at 25.

[37]Id.

[38]First Amended Complaint at 17, ¶ 47, Docket No. 19.

[39]Id. at 17, ¶ 48.

ORDER – Motion to Dismiss First Amended Complaint - 8 -

'detailed plan on how the Department intends to complete cleanup of each contaminated site' – much less act upon and/or implement any such cleanup plans."[40] Rather, plaintiffs allege that in the 2016 report, BLM "attempted to shift responsibility for the contaminated ANCSA Lands onto Alaska."[41] By way of example, plaintiffs allege that "BLM 'recommended' that DEC identify those sites that require remedial action' and document specific information related to the sites[.]"[42] But, plaintiffs allege that this was "a task Congress expressly directed the []DOI, of which BLM is a part, to complete."[43]

The State of Alaska and the DEC commenced this action on July 15, 2022. The action was not brought on behalf of ANCs or Native Alaskans. In their first amended complaint, plaintiffs assert three causes of action.

Plaintiffs' first cause of action is an "unlawfully withheld" claim brought pursuant to Section 706(1) of the Administrative Procedure Act ("APA"). Plaintiffs allege that "Congress has imposed required duties" on defendants "related to identifying, investigating, and remedying the contamination" of ANCSA Lands in the "1995 Directive[] and 2014 Directive."[44] Plaintiffs allege that defendants have "repeatedly failed to take the actions that Congress directed [them] to take."[45] Plaintiffs allege that "[d]efendants' failure to comply with Congressionally directed duties within the prescribed time periods is unlawful and has caused and continues to cause Alaska harm, including, but not limited to, natural resources

---

[40]Id. at 18, ¶ 50.

[41]Id. at 18, ¶ 51.

[42]Id.

[43]Id. (emphasis omitted).

[44]Id. at 21, ¶ 61.

[45]Id. at 21, ¶ 62.

damages and lost use and value of these natural resources."[46]  Plaintiffs seek a declaration that "[d]efendants' failures to comply with their obligations imposed by the 1995 and 2014 Directives constitute agency action unlawfully withheld under the APA[;]" and they seek to "compel[] the United States to comply with the Congressionally mandated obligations set forth in the 1995 Directive and 2014 Directive."[47]

The second cause of action is an "unreasonable delay" claim brought pursuant to Section 706(1) of the APA.  Plaintiffs allege that "the 1995 and 2014 Directives mandated the []DOI to take specific actions in relation to the ANCSA Lands, and in related reports, BLM/[]DOI have further committed to undertaking certain ongoing obligations to ensure efficient investigation, and ultimately, cleanup of the contaminated ANCSA Lands."[48]  Plaintiffs allege that defendants' delay in complying with the obligations set forth in the 1995 and 2014 Directives "constitute ... agency action unreasonably delayed under the APA."[49]  Plaintiffs further allege that this delay has "caused and [is] continuing to cause Alaska harm including, but not limited to, natural resources damages and lost use and value of these natural resources."[50]  Plaintiffs seek a declaration that "[d]efendants' failures to comply with the 1995 and 2014 Directives constitute agency action unreasonably delayed under the APA[;]" and they seek to "compel[] the United States to comply with the Congressionally mandated obligations set forth in the 1995 Directive and 2014 Directive--which include that

---

[46]Id. at 23, ¶ 73.

[47]Id. at 24, ¶¶ 76-77.

[48]Id. at 24, ¶ 81.

[49]Id. at 25, ¶ 82.

[50]Id. at 25, ¶ 84.

ORDER – Motion to Dismiss First Amended Complaint                    **- 10 -**

the []DOI take all required actions to prepare a detailed plan on how it intends to complete cleanup of each contaminated site."[51]

The third cause of action is a Section 703 APA claim.[52] Plaintiffs allege that "[a]n actual controversy now exists between Alaska and the United States in that Alaska contends that [d]efendants are responsible for assessing and remedying the injustices created by [d]efendants' transfers of lands to Alaska Natives under ANCSA."[53] Plaintiffs further allege that "[d]efendants have denied any further responsibility for complying with the applicable Congressional Directives."[54] Plaintiffs "seek[] a judicial declaration ... that [d]efendants' failure to comply with the 1995 and 2014 Directives constitutes agency action unlawfully withheld and/or unreasonably delayed in violation of the APA."[55] Plaintiffs also "seek[] a ... judicial declaration ... that [d]efendants have the authority to fulfill the 1995 and 2014 Directives."[56]

Pursuant to Rules 12(b)(1) and (b)(6), Federal Rules of Civil Procedure, defendants now move to dismiss plaintiffs' first amended complaint on the grounds that plaintiffs lack standing to bring claims under Section 706(1) of the APA and that plaintiffs' Section 706(1) claims are implausible as currently pled.

---

[51]Id. at 25, ¶¶ 87-88.

[52]Section 703 of the APA authorizes actions for declaratory relief. Los Angeles Haven Hospice, Inc. v. Sebelius, 638 F.3d 644, 662 (9th Cir. 2011).

[53]First Amended Complaint at 26, ¶ 92, Docket No. 19.

[54]Id. at 26, ¶ 93.

[55]Id. at 27, ¶ 94.

[56]Id. at 27, ¶ 95.

ORDER – Motion to Dismiss First Amended Complaint                    - 11 -

Because "Article III standing is an essential ingredient of subject matter jurisdiction," Perry v. Newsom, 18 F.4th 622, 630 (9th Cir. 2021), we begin with the question of whether plaintiffs have standing.[57] Standing is "properly raised in a Rule 12(b)(1) motion to dismiss." Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1122 (9th Cir. 2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Circ. 2004). Here, defendants have made a facial attack. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).

"[T]he 'irreducible constitutional minimum' of [Article III] standing consists of three elements.'" Perry, 18 F.4th at 630 (quoting Spokeo v. Robins, 578 U.S. 330, 338 (2016)). "Those elements require that the party invoking federal jurisdiction '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct ..., and (3) that is likely to be

---

[57]"The APA imposes a prudential standing requirement in addition to the requirement[] imposed by Article III of the Constitution[.]" Chilkat Indian Village of Klukwan v. Bureau of Land Management, 399 F.Supp.3d 888, 906 (D. Alaska, 2019) (citation omitted). "Prudential standing is not a jurisdictional limitation on [the court's] review." Independent Living Center of S. Calif., Inc. v. Shewry, 543 F.3d 1050, 1065 n.17 (9th Cir. 2008) (citation omitted). In their opening brief, defendants only argue that plaintiffs lack Article III standing. They do not argue that plaintiffs lack prudential standing. "By failing to articulate any argument challenging [plaintiffs'] prudential standing," defendants have "waived that argument." Id.

ORDER – Motion to Dismiss First Amended Complaint - 12 -

redressed by a favorable judicial decision.'" Id. (quoting Spokeo, 578 U.S. at 338). Plaintiffs bear the burden of demonstrating that they have standing. Meland v. Weber, 2 F.4th 838, 843 (9th Cir. 2021).

Although plaintiffs from time to time argue that Alaska Natives have suffered various injuries as a consequence of the ANCSA land selection process, plaintiffs do not have, or claim to have, standing to bring an APA claim on behalf of Alaska Natives or any Alaska Native regional corporation. No direct grantee of ANCSA lands, (i.e., no Alaska Native or Alaska Native regional corporation) is a party to this case. The sole jurisdictional issue before the court is whether the State of Alaska and DEC have standing to challenge the agency responses to the congressional directives of 1995 and 2014.

There is no dispute that plaintiffs have adequately alleged injuries-in-fact. As for the 1995 Directive, plaintiffs allege that "BLM's failure to follow Congress's 1995 Directive has significantly injured Alaska[,]" in that "BLM's failure has frustrated Alaska and Alaska Native's abilities to fully and fairly remedy the contamination of ANCSA land[,]" and that "BLM's inaction has allowed hazardous substances and contamination to move and spread through Alaska's surface waters, groundwater, and natural resources."[58] As for the 2014 Directive, plaintiffs allege that defendants have "attempt[ed] to shift responsibility for the contaminated ANCSA Lands onto Alaska" and that "a vast majority of inventoried ANCSA Lands ... remain burdened with contamination that poses risks to human health and the environment and/or limits the use of such lands."[59]

---

[58]First Amended Complaint at 14-15, ¶ 43, Docket No. 19.

[59]Id. at 18-19, ¶¶ 51-52.

ORDER – Motion to Dismiss First Amended Complaint                                    - 13 -

But there is a dispute as to whether plaintiffs have adequately alleged the other two elements of standing, "traceability and redressability." Mecinas v. Hobbs, 30 F.4th 890, 899 (9th Cir. 2022). "'[T]he fairly traceable and redressability components for standing overlap and are two facets of a single causation requirement.'" Id. (quoting Washington Env't Council v. Bellon, 732 F.3d 1131, 1146 (9th Cir. 2013)). "However, they are distinct in that traceability 'examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested relief.'" Id. (quoting Washington Env't Council, 732 F.3d at 1146).

"To establish traceability, 'there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). To a large extent, plaintiffs' claims are based on allegations that the reports submitted to Congress in response to the 1995 and 2014 Directives were inadequate. Defendants argue that plaintiffs have failed to explain how these inadequacies or any alleged delay or inaction with the respect to the reports caused plaintiffs' alleged injuries.

Plaintiffs allege that they have been injured because some of the ANCSA Lands are contaminated, but plainly the 1995 and 2014 Directives do not assign responsibility to defendants for the contamination of the ANCSA Lands. Rather, those directives required that the DOI submit reports to Congress, which the DOI did.

Plaintiffs also allege that they have been harmed because defendants' inaction and delay, such as their delay in identifying contaminated ANCSA Lands, has frustrated plaintiffs' ability to remediate the contaminated land. But, any inaction or delay in identifying contaminated lands was not the result of anything defendants did, but rather was

ORDER – Motion to Dismiss First Amended Complaint                                    - 14 -

the result of the way in which Congress chose to address the problem of contaminated ANCSA Lands

In addition, plaintiffs allege that they were harmed by defendants' inaction and delay because it has allowed the continuation and spread of the contamination to the land. But, any continuation or spreading of the contamination to land is traceable to congressional decisions, not to defendants' responses to those decisions.

And, contrary to plaintiffs' contention, defendants were not required to take action to remediate contamination on the ANCSA Lands. The 1995 Directive specified that the DOI report consist of four categories of information and "recommendations for any additional legislation that the Secretary concludes is necessary to remedy the problem of contaminants on the lands[.]" 43 U.S.C. § 1629f. Section 1629f does not require the DOI to take any action to remediate contaminated lands.

The 2014 Directive required BLM to "provide the House and Senate Committees on Appropriations with a detailed report[,]" which included "a comprehensive inventory of contaminated sites conveyed through ANCSA," a status report "on the six recommendations listed in the 1998 report; and [] a detailed plan on how the [DOI] intends to complete cleanup of each contaminated site."[60] Nothing in the 2014 Directive required the agency defendants to take any action on the remediation of contaminated lands. The requirement to submit a remediation plan to Congress did not oblige BLM to implement that plan. See American Small Business League v. Contreras-Sweet, 712 Fed.Appx. 667 (9th Cir. Feb. 16, 2018). In this unpublished decision, the League challenged the Small Business Administration's 2015 annual report to Congress, arguing that it did not comply with the statutory requirements of

---

[60]Exhibit D at 455, First Amended Complaint, Docket No. 19.

ORDER – Motion to Dismiss First Amended Complaint                    **- 15 -**

the Small Business Act.  Id.  In affirming the district court's dismissal of the case for lack of final agency action, the Ninth Circuit stated that "[a]lthough an agency must formulate a remediation plan if it does not reach its goal, 15 U.S.C. § 644(h)(1)(D), there is no statutory obligation to follow the formulated plan."  Id. at 668.  Similarly here, Congress imposed no obligation for BLM to follow the remediation plan that it was required to propose in its report in response to the 2014 Directive.

But even if defendants were not obligated to implement the remediation plan, which they were not, plaintiffs argue that there are a number of other discrete agency actions that defendants were required to take and that defendants failed to take.  First, plaintiffs argue that in the 1998 report, "DOI and BLM expressly committed to certain ongoing duties[.]"[61]  By way of example, plaintiffs point out that in the 1998 report, the DOI stated that it "will coordinate the implementation of" the six recommendations, recommendations that included "[c]ompil[ing] a coordinated, comprehensive inventory of contaminated sites with input from all parties;" [a]naly[zing] the data collected and report[ing] to Congress on sites not covered in existing programs and recommend[ing] whether further Federal programs or actions are needed;" and [m]odify[ing] policies, where needed, to address contaminants and structures that may affect public health and safety on ANCSA lands[.]"[62]  As another example, plaintiffs point out that in the 1998 report, the DOI stated that it "will continue to work with" federal agencies that were addressing certain contaminated ANCSA Lands "to ensure that cleanup efforts will continue."[63]  And, as yet another example, plaintiffs point out that in the

---

[61]Plaintiffs' Response [etc.] at 18, Docket No. 25.

[62]Exhibit C at 7, First Amended Complaint, Docket No. 19.

[63]Id. at 40.

1998 report, the DOI stated that it would "take all practicable steps to avert the future conveyance of contaminated land."[64]  Plaintiffs argue that the foregoing statements (and others) made in the 1998 report are binding commitments that constitute discrete agency actions that defendants had a duty to take.  In other words, plaintiffs argue that the statements made in the 1998 report were binding on defendants.

"The general consensus is that an agency statement, not issued as a formal regulation, binds the agency only if the agency intended the statement to be binding."  Farrell v. Dep't of Interior, 314 F.3d 584, 590 (Fed. Cir. 2002).  "The primary consideration in determining the agency's intent is whether the text of the agency statement indicates that it was designed to be binding on the agency."  Id.  But, "'a statement in a plan that BLM 'will' take this, that, or the other action" is not 'a binding commitment ... absent clear indication of binding commitment in the terms of the plan.'"  Oregon Natural Desert Ass'n v. Bushue, --- F.Supp.3d ---, 2022 WL 17487065, at *14 (D. Or. 2022) (quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 69 (2004)).

In Bushue, the court considered whether the defendants had failed to take an action that was contained in the Oregon Greater Sage-Grouse Record of Decision and Approved Resource Management Plan Amendment (2015 ARMPA).  Id. at *10.  In the 2015 ARMPA, one of the management decisions was that BLM would make 13 key research natural areas (RNAs) unavailable to grazing.  Id.  "[T]he RNA closures [were] tied to specific locations and details."  Id. at *12.  "BLM identified the exact acreage unavailable to grazing within each RNA[, and t]he 2015 ARMPA locates each of the closed areas, which appear on a map."  Id.  The plaintiffs argued that the management decision related to the RNA closures

---

[64]Id. at 10.

constituted a binding commitment.  Id. at *14.  The court held that "the text of the grazing

provisions in the ARMPA establishes a binding commitment of BLM to make the key RPMs

unavailable to grazing."  Id. at *15.  The court explained that:

> [t]his commitment cannot be construed as a broad statutory mandate in the same manner as might provisions to "monitor" or "determine."  Rather, the 2015 ARMPA contains ... a specific, unequivocal command placed on the agency to make key RNAs unavailable to grazing.  BLM's decision to make 13 specified areas unavailable to grazing is different from nearly every other provision in the plan.  By designating the exact acreages and specific locations in the ARMPA, BLM went out of its way to make clear it was committing to a certain process of closing specific areas to grazing.  If provisions that certain specific acreages will be unavailable is not enough to prohibit grazing authorization, then no language would suffice.  This provision is precisely the kind of site-specific, non-discretionary, expressly articulated land use plan require-ment that the Supreme Court instructs may be compelled under Section 706(1).

Id. (internal citations omitted).

Similarly here, plaintiffs argue that the statements in the 1998 report set out above

constitute discrete and required agency action because defendants used clear language of

commitment and "will" statements.  Thus, plaintiffs argue that defendants committed to

taking discrete agency actions in the 1998 report and their alleged injuries are fairly traceable

to defendants' failure to follow through on these commitments.

Plaintiffs' reliance on Bushue is misplaced as it does not involve statements made by

the Secretary and/or BLM in a report to Congress, such as we have here.  Moreover, Bushue

stands for the proposition that agency actions with respect to land use plans are reviewable,

and that specific commitments in a valid land use plan may be enforced under Section 706(1-

).  Here, however, there is no extant land use plan, nor a congressional directive (other than

the required report) requiring action on the part of the Secretary.  Rather, it is clear that the

ORDER – Motion to Dismiss First Amended Complaint                                    - 18 -

Secretary's 1998 report was providing information and recommendations for Congressional consideration and funding. BLM could not take action on the recommendations without congressional funding. Similarly, language in the 1998 report – that the DOI would "coordinate implementation" of the recommendations – is not language clearly evincing an intent to be bound. Because the 1998 report does not bind the agency defendants to take any particular action, plaintiffs' alleged injuries-in-fact are not traceable to defendants' delay or inaction as it relates to statements made in the 1998 report.

As for the claims based on the 2014 Directive, plaintiffs argue that the 2014 Directive contained discrete agency action that defendants have failed to take and that their alleged injuries are fairly traceable to this failure. Plaintiffs point out that the 2014 Directive stated that BLM "shall provide ... a detailed report" that

> include[d] the following information: (1) a comprehensive inventory of contaminated sites conveyed through ANCSA, including sites identified subsequent to the 1998 report; (2) an updated status on the six recommendations listed in the 1998 report; and (3) a detailed plan on how the [DOI] intends to complete cleanup of each contaminated site.[65]

Plaintiffs argue that the use of the word "shall" is evidence that Congress intended defendants to take the mandated actions. Plaintiffs argue that defendants were required to prepare a "comprehensive" contaminated site inventory, but they allege that "[i]nstead of preparing a 'comprehensive' inventory of contaminated ANCSA Lands, the 2016 Report merely provides the inventoried sites' coordinates, with very few (if any) notes about the conveyance or site."[66] Plaintiffs also argue that the 2014 Directive required defendants to prepare "a detailed plan on how" the DOI "intend[ed] to complete cleanup of each

---

[65]Exhibit D at 455, First Amended Complaint, Docket No. 19.

[66]First Amended Complaint at 17-18, ¶ 49, Docket No. 19.

ORDER – Motion to Dismiss First Amended Complaint                                    - 19 -

contaminated site,"[67] but plaintiffs allege that "BLM failed to take the actions necessary to prepare and submit" such a plan.[68]  And, plaintiffs argue that their alleged injuries are traceable to defendants' failure to comply with these two requirements in the 2014 Directive.

Plaintiffs' alleged injuries-in-fact are not fairly traceable to defendants' alleged failure to prepare a comprehensive inventory or to prepare a detailed remediation plan.  The inventory which Congress received may have been inadequate.  The update of defendants' six recommendations may or may not have been adequate, and defendants' remediation plan probably was inadequate.  Nevertheless, Congress was in control of the situation.  Congress did not impose upon defendants any discrete obligation in the 2014 Directive other than to report.  Defendants were not directed to implement a remediation plan.  The contamination or spread of contamination of which plaintiffs complain was not caused by any action or inaction on the part of the defendants in connection with the 2014 Directive and/or 2016 Report.  It was the result of congressional action and/or inaction.  In short, plaintiffs' alleged injuries-in-fact are not traceable to any delay or inaction by defendants as it relates to the 2014 Directive and/or 2016 Report.

Because plaintiffs have not adequately alleged that their injuries-in-fact are fairly traceable to defendants' alleged misconduct, plaintiffs lack standing to pursue their Section 706(1) claims.  See Lujan, 504 U.S. at 561 (all three elements of standing must be met in order for plaintiff to have standing).  Nevertheless, for the sake of completeness, the court considers whether plaintiffs have adequately alleged redressability.

---

[67]Exhibit D at 455, First Amended Complaint, Docket No. 19.

[68]First Amended Complaint at 18, ¶ 50, Docket No. 19.

"Redressability is satisfied so long as the requested remedy 'would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" Mecinas, 30 F.4th at 900 (quoting Renee v. Duncan, 686 F.3d 1002, 1013 (9th Cir. 2012)). "Plaintiffs need only show that there would be a 'change in a legal status,' and that a 'practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" Renee, 686 F.3d at 1013 (quoting Utah v. Evans, 536 U.S. 452, 464 (2002)).

Plaintiffs argue that they can establish redressability. "A plaintiff's burden" to demonstrate redressability is "'relatively modest.'" Id. (quoting Bennett v. Spear, 520 U.S. 154, 171 (1997)). Plaintiffs insist that they have met their modest burden. Plaintiffs again argue that defendants have misconstrued their claims and they are not simply complaining that defendants' reports were inadequate.[69] Rather, plaintiffs continue to argue that they are alleging that the 1995 and 2014 Directives required defendants to take a number of discrete agency actions which defendants have failed to take. When their claims are viewed in the proper light, plaintiffs argue that their alleged injuries would be redressed by a favorable decision because defendants would be compelled to take the required actions, which plaintiffs argue would further the efforts to remediate the contaminated ANCSA Lands and prevent contaminated lands from being transferred in the future.

---

[69]To the extent that plaintiffs' claims are based on allegations that the reports submitted to Congress were inadequate, such claims would not be redressable by this court. The Ninth Circuit Court has held "that a federal court [cannot] redress an injury based on an allegedly inadequate report that an agency is obligated to file with Congress." Renee, 686 F.3d at 1016.

ORDER – Motion to Dismiss First Amended Complaint                    - 21 -

But, as discussed above, neither the 1995 and 2014 Directives nor the 1998 and 2016 reports required any action on the part of defendants other than the providing of information. Defendants were under no directive to undertake remediation of contaminated lands, nor to implement a plan for such remediation. The directives did not express, and were never intended, to effect a remedy for the injuries of which plaintiffs complain. Thus, plaintiffs have failed to meet their modest burden of demonstrating redressability.

On a final note, the parties made no argument as to plaintiffs' standing to bring their Section 703 claim. But, if plaintiffs lack standing to bring their Section 706(1) claims, which they do, they also lack standing to bring their Section 703 claim which seeks the same declaratory relief.

Conclusion

Article III standing is an essential ingredient of subject matter jurisdiction. Plaintiffs have failed to allege that the injuries of which they complain are fairly traceable to any conduct of the defendants, and it is unlikely that a favorable decision by this court would address those injuries. For lack of Article III standing, defendants' Rule 12(b)(1) motion to dismiss is granted.[70]

When, as here, there are "jurisdictional defect[s] in the pleadings, '[d]ismissal without leave to amend is proper only if it is clear ... that the complaint could not be saved by any amendment.'" Swartz v. KPMG LLP, 476 F.3d 756, 760 (9th Cir. 2007) (quoting McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc., 339 F.3d 1087, 1090 (9th Cir. 2003)). The court is convinced that plaintiffs could not ever adequately allege standing as

---

[70]Because plaintiffs' claims are being dismissed pursuant to Rule 12(b)(1) for a lack of subject matter jurisdiction, the court need not, and indeed cannot, consider defendants' Rule 12(b)(6) arguments.

to their Section 706(1) claims given that the 1995 and 2014 Directives only required that the DOI submit reports to Congress, which it did. Therefore, plaintiffs are not given leave to amend their complaint.

The clerk of court is directed to enter judgment dismissing plaintiffs' first amended complaint with prejudice.

DATED at Anchorage, Alaska, this 17th day of July, 2023.

/s/ H. Russel Holland
United States District Judge